Ms. Stainholtz. Good morning. May it please the Court. My name is Rachel Stainholtz, and I represent Ellery Zephier. We are asking this Court to vacate Zephier's convictions or, in the alternative, for this Here, the Court created an impossible situation for the defense. That is, the Court erred in admitting 404B evidence, and then the Court erred again by cutting off Zephier's attempts at cross-examination of this very evidence. First, under Rule 404B, the Court admitted the testimony of Zephier's former girlfriend, Angelique, about an incident in Zephier's trailer about a year prior to the incident events. But any benefit of this evidence was significantly outweighed by unfair prejudice under Rule 403's balancing test. This is because Angelique came forward with her testimony eight months after the incident, and at this time, she had motive to fabricate or embellish details in order to shift blame onto Zephier. During this time, she was aggressively being approached by members of the community, being accused of involvement in the death of AK. AK was also a former partner of Zephier, and Angelique dated Zephier at the same time that AK dated Zephier. And so Angelique was scared, and she was wanting to relocate, and so she wanted to shift the blame from her onto Zephier. This is exactly the type of evidence that Rule 403... Not yet. I mean, you haven't gotten to the unfair prejudice. You've just described why she could be impeached for coming late and so forth. Where's the prejudice from the delay and the prejudice because, oh, there are things back there out there that might give her an incentive to fabricate? That's not standing alone unfair prejudice. Sure. In admitting, just in admitting testimony. So the concern is that she was the one that had firsthand knowledge of that incident in the trailer with Zephier. So the concern is that she has this motive to shift this spotlight of blame onto Zephier and embellish what happened in that trailer to make him sound more violent. But that doesn't establish precedent for excluding probative evidence. We believe it does, and we believe it falls squarely under 403 because recall that... Okay, give me an A circuit case that somehow relates this situation to unfair prejudice, which we have construed quite rigorously. Sure. Admittedly, this is a unique set of circumstances, but I do... Admitted what? Admittedly, this is a unique set of circumstances that are present in this case, but I think this goes to Rule 403's balancing test because this inquiry into this motive for bias and fabrication has the potential to confuse the issues at trial, to have this mini-trial within a trial, to mislead the jury, and it had the potential to be highly inflammatory towards Zephier. And so... And there was an alternative. I don't understand... Inflammatory. Yeah. But not... I don't care about it, whether he thinks it's inflammatory. Why is it inflammatory for the jury? Well, the court recognized that it... The court cabined this very carefully. Uh-huh. You didn't like the cabining. Sure. But that doesn't... That's highly relevant to the 403 component of the inquiry. To your question about what was highly inflammatory to Zephier, the concern was, is that... There was also rumors that Zephier was involved in the murder of A.K. I don't care about the concerns. I'm trying to... Sitting in the jury panel, if it doesn't come out, of course, it's... All the jury hears is what she has to say that might be probative. If it does come out, it'll come out through impeachment. And the jury can decide whether it affects her credibility or not. And I guess there's the prejudice, you can say, is that, well, if she's fabricating to protect herself, that's relevant to credibility. Exactly. But that gets to the scope of the questioning. That does not get to the admissibility. We believe it does get to the... You do. Yes. You say you haven't got a case. Right. You've got a gazillion cases saying it's not... Sure, it's always prejudicial. It's got to be unfair prejudice. And that has to be defined very precisely, very carefully. Well, I do think that this played out, then, at cross-examination, where we see that the jury is exploring her bias. And that was an impossible situation that the court put them in. Well, that's a different question. Now we're past 404. Now we're into trial... We are, but it does... Century... Correct. Correct. But I think it does demonstrate your point about... But it's a different... No, it demonstrates to me that this is not a 403. The district court handled the 403 very carefully, and you haven't said anything that gets at that initial decision.  In a role of decisions where she excluded, what, four or five other witnesses. Okay. Why isn't this... On that score, why isn't this just really a... It's a catch-22. It's a tactical decision that you have to make. You got two bad options, right? You got two bad options. But that's two bad options because it just so happens that the testimony given by the witness is tied up in other... Potentially other crimes and things like that. And so you have the option of letter talk. That's a bad option without impeachment. You have the option of letter talk, and then we impeach her. But then there's the problem that his own involvement could come out. But that seems like an ordinary strategic decision. You make a trial. I mean, you've got to decide, is the juice worth the squeeze, so to speak, on this? And so I'm kind of, with Judge Loken, I don't see what's unfair about it. It's just the reality of what the facts led us to. Sure. Well, I would identify that I believe that there was a third choice, and that is what the defense offered, which was you can get this evidence in through Officer Sully. We avoid all of this other information that is unsavory and difficult to navigate, and that was the alternative here. And Officer Sully did testify. But that's not firsthand knowledge. It's not. Yeah, and so I think that's a huge disadvantage to the government. And that's ultimately the balancing the district court has to make. There's a lot of bad choices here. One kind of hamstrings the defense, another hamstrings the government. I've got to decide which one's the most fair, I think. Yeah, and that's where we submit that that's where the error was made, is that that was the alternative. That was the balance of strike here, was to just go with Officer Sully. And we acknowledge it wouldn't have been the government's first choice, but there were balances to be struck here, and that was the correct balance, and it was error to choose otherwise. Well, and then when you go to cross-examination, I just want to close the loop. I really think the district court was trying to protect the defendant. And had you gone on and insisted, or had trial counsel gone on and insisted, said, no, no, we understand the risk, we absolutely know the risk, we have got to impeach this witness, I'm betting the district court would have allowed it to go on, would have said, okay, at your peril, you can cross-examine this witness, and if it comes out that your client is wanted in connection with this other crime, so be it. You've opened the door. I don't know. What's wrong with that? I understand your question. The attorney made a tactical decision, but I do think that that demonstrates just this impossibility, impossible situation that the court put the defense in. No, the court didn't. The circumstances did. Well, both. The court made a ruling on the circumstances. But I do see that I'm... You challenged the way the opposing counsel wanted to try the case. I see that. I mean, getting into my rebuttal time, is it okay if I save the remainder for rebuttal? No. You answer now. Okay. We'll see if there's a rebuttal. Sure. Will you repeat your question? No, I can't repeat the question. Okay. Then may I reserve the remainder of my time for rebuttal? Yes. Okay, thanks. Good morning, and may it please the court. I'm Kevin Colliner with the U.S. Attorney's Office in South Dakota, and I'm here asking this court to affirm the jury's convictions of Mr. Zephyr in this case. I want to start by telling the court I appreciate you waiting for me as I came from one room to the other. We've been there. Well, I listened to the questions of the panel, and I think it gets right at the heart of this. I think there's a distinction here to be made on what the record actually is here on the objections that were made during the cross-examination and the court sustaining those objections. I think it's very important to look at the fact that the district court was the one who asked for a bench conference after those sustained objections and said, look, I'm doing this to somewhat protect you, and essentially gave counsel the option. Judge Strass, I think your questions were right on point in the sense that it's not just that it seemed like that's what the district court was doing, that's what the district court was doing. And in fact, that's also the discussion that plays out in pretrial and all the discussions about this testimony of A.D., that there's this conundrum of trying to keep out what I think the district court believed was unfairly prejudicial, which was someone blurting out that perhaps this defendant isn't only guilty of assault and kidnapping, but also guilty of murder of a person who's a crime that's not even charged here. And so the questions I think that defense counsel wanted to ask is essentially, what were the rumors in the community? And I don't know how a witness answers that other than saying, the rumors in the community were that I killed this other person, but I didn't do it, he did it, right? I mean, that's the concern that the district court was weighing and brought counsel up and said, look, here's why I sustained those objections, what does counsel say? I'm going to move on, right? A tactical decision is made there. It is a really tough decision. I mean, maybe the circumstances got him there, but I mean, that is the very definition of a catch-22. Let a witness go on and say all these, not inflammatory in the sense of unfair, but things that are going to color the jury, but having no means to sort of impeach that person without opening the door. I'd suggest there was a fourth option here that hasn't been discussed, which is an offer of proof out of the presence of the jury. And that's a time when the court could have counseled the witness, hey, we have an in limine order here that you can't discuss this defendant's potential involvement in the murder of AK. And that doesn't come out of just my mind. That's what the district court said in its written order regarding this motion in limine. I think it's page 9 of that order. They say that's when he's reserving ruling on it. He says perhaps this is a matter that we hear from the witness out of the presence of the jury, suggesting that that didn't happen here. Now, the other option, the third option suggested by my friend in counsel, is that Officer Soley could have put this in. The government did put that in. Now, that goes to the potential prejudice here. When Officer Soley testifies about being the responding officer on this assault of AD in the past, now it's not the best evidence. Of course, we'd want AD to testify about it directly. But in a certain sense, it rendered her testimony cumulative at that point. He testifies that he shows up. He's called there by someone in the house to come to this, and he finds AD there being assaulted by this defendant and, for the record, identifies the defendant. So to claim that this had some sort of effect on the jury's verdict, which is, of course, the question the court has to ask if it finds the admission of this was improper, I mean, it's pretty difficult to say here that this mattered. Although, you know what? That goes both ways because on admissibility, it makes it more attractive to say the evidence would have come in another way. On harmlessness, it comes out the opposite, which is the jury would have heard it anyways, and so maybe it didn't make a difference. But at least your argument goes both ways and at least feeds defense counsel's argument that maybe it should have been kept out. Kept out both with the officer and with? No, no, no, no. If the officer was going to testify, there was no reason to have to create this sort of Pandora's box problem. Well, and I guess maybe that gets at that, you know, was this properly introduced 404B evidence? I mean, you've got the same guy, the same trailer, the same kind of romantic relationship, the same allegations of the same type of assault pretty directly in time. And so, you know, that's what the district court is weighing here. And, of course, the question for this court is whether the district court, you know, abused its discretion or whether the Sixth Amendment, perhaps it's a de novo standard of review. But, you know, I just kind of come back to the reality of the testimony here, which is the jury heard directly from the victim in this case, testified I think at 70-some pages in the transcript, cross-examined at length, talked all about the assaults here and the kidnapping here. There were limiting instructions also regarding this testimony. That's, of course, important to determining whether this, if improper, was harmless. Limiting instruction both when the testimony occurred, but also in the final instruction. And those limiting instructions were talked about in closing by defense counsel. So, the court would be hard-pressed to say that this mattered at all at the end of the day to this verdict. I do want to mention the sufficiency arguments. You know, frankly, these all really go to credibility assessments that the defendant is asking this court to make. And this court, of course, has said many times that it won't overturn a jury's credibility determinations. We have the direct testimony, you know, of this victim. And in terms of the kidnapping argument, this court has never placed a durational element on kidnapping. And what I mean by that, we've charged this case as a kidnapping that occurred between one date and another. And that issue interested me. I haven't read the instructions. Were the instructions objected to? And if not, how did they deal with this question of all the opportunities she had to break off the lengthy kidnapping? I mean, that was the thrust of the defense argument here, that she had all these various opportunities. To your question about the jury instruction, there was discussion about the kidnapping instruction and how the definitions would apply or wouldn't apply on certain elements. Were the jurors told one hour is enough, even if she could have broken it off? The government briefly made that argument in closing. It wasn't addressed in the instructions. It wasn't addressed directly, but the instructions would... On the facts, it's a closed question here. Well, there's an argument for the defense counsel to make, and they made it very forcefully to the jury, and the jury rejected it. So, yeah, absolutely, this is a case where we have someone who is claiming that she was held against her will, but yet she was allowed to go to her mother's house, and there was a locked security door there, and there was a security guard, and she went back, and she brought a fan, and a variety of those things. What I was getting at on that durational element is, as the district court noted when there was the acquittal motion, it noted, look, at the very least, there's direct testimony that she tried to run to a transit stop at one point, and he pulled her back and beat her more and held her then at the trailer. So on that alone, the jury had sufficient evidence here to find the kidnapping count. Unless the court has any further questions, I'll just rest on the arguments in the briefing. I'm still... You know, she, particularly when she spent almost a day at her mother's house, then she goes back and voluntarily reinserts her in the situation which the government later charged was before and after kidnapping. I don't know. I'm not sure. Voluntarily returning to the same situation. Maybe it's just a sufficiency question, but your durational argument just makes it easy for... If it's charged that way, then going on your own for half a day and then going back for 10 minutes permits conviction. I'm not sure that would be... What I'd say to that, Your Honor, is the victim was asked directly about, and I notice I'm out of time, the victim was asked directly about why she went back and she testified about how she was fearful of him and that she felt she had no choice. And the jury instruction did instruct the jury that... That could be other crimes, but it's not necessarily kidnapping because if you voluntarily put yourself at risk. And her testimony that it wasn't voluntary, that she was afraid for her safety and her life. And I think the case law bears out that kidnapping isn't only effectuated by physical force, that it can be psychological coercion and other fears of one's safety. Thank you. I'll give you a minute for rebuttal. Thank you. I'll start with the harmlessness question of those first two issues. With the emphasis that this is the government's burden to prove and on the Sixth Amendment issue, it's beyond a reasonable doubt that they would have to prove harmlessness. We don't think that Officer Sully's testimony necessarily made anything with Angelique's testimony harmless. It had the purpose of... What Angelique's testimony did was that it bolstered Selwyn's credibility. It did offer that firsthand account of what happened in the trailer. And then the limiting instruction doesn't save this because it doesn't speak to this specific harm that was caused here, which was this inability to really probe into Angelique's motivation for bias. You actually have the opposite problem that opposing counsel does because you have the argument of saying, yeah, yeah, it shouldn't come in because it didn't have much value. But, ooh, it was really harmful once it did come in. Yeah, yes. With all the 403 concerns, while it wasn't their first choice, their first choice would have been to have Angelique, it was riddled with 403 problems. The best alternative was Sully, and it could have gotten to the point of lack of mistake and intent, which was the probative value here, and that would have excluded us arguing these first two issues. It would have just been the sufficiency challenges after that. But they didn't. They let her testify, and we've got a slew of problems from there. And for those reasons, I see I'm out of time unless the Court has any other questions, but we ask that this Court vacate the convictions or an alternative reverse and remand. Thank you. Very good. Thank you.